IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY PRICE, *et al.*, | ) CASE NO. 1:10 CV 214 |
| | ) |
| Plaintiffs, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| AETNA LIFE INSURANCE COMPANY, | ) |
| | ) **REPORT & RECOMMENDATION** |
| Defendant. | ) |

# Introduction

Before me by referral[1] is the unopposed motion[2] of defendant Aetna Life Insurance Company for judgment on the administrative record in the ERISA benefits case[3] filed against it by plaintiffs Timothy and Keena Price.[4] Although the Court approved[5] a joint motion by Aetna and the Prices requiring them to file cross-motions for judgment on the administrative record by June 28, 2010,[6] only Aetna has so moved, and, as noted, its motion has been unopposed.

---

[1] ECF # 16.

[2] ECF # 14.

[3] All other claims and defendants have been previously dismissed by the Court. ECF # 12.

[4] ECF # 1.

[5] Non-document order of May 28, 2010.

[6] ECF # 13.

## Facts

In 2007, Timothy Price, an employee of Avery Dennison Corporation, was a participant in an employee welfare benefit plan ("Plan") providing long-term disability (LTD) insurance, which Avery Dennison had purchased from Aetna.[7] The Plan provided, *inter alia*, for payments of LTD benefits to a disabled participant, as that term was defined in the plan, upon that participant meeting two conditions: (1) that the disabled participant could not perform the essential functions of his regular occupation or an alternative job offered by the employer for 24 months, and (2) that the disabled participant was unable to earn more than 80 percent of his pre-disability monthly income.[8]

On July 19, 2007, Price stopped working at Avery Dennison, originally because he believed he had pancreatic cancer, although that diagnosis was later changed to Type II diabetes along with various behavioral and pyschiatric issues.[9] As Aetna notes, upon leaving work under these circumstances, Price was eligible for, and received, short-term disability benefits from the Avery Dennison employee welfare plan for the next six months, or until January 24, 2008.[10]

---

[7] ECF # 14 at 3-4.

[8] *Id.* at 4-6, citing administrative record. All further citations in this section to Aetna's brief in support of its motion for judgment on the administrative record are to statements that are, in turn, supported by citations to the administrative record.

[9] *Id*. at 6.

[10] *Id*.

The next day, January 25, 2008, Price became eligible to receive LTD benefits, for which he had already applied.[11]  Upon review of the application, the plan language, and Price's supporting records, Aetna approved the application for LTD benefits, such approval to be effective on the first day of eligibility.[12]  Aetna's approval of LTD benefits was based on Price being diagnosed with affective psychosis, panic disorder with agoraphobia, and diabetes.[13]  However, upon learning that Price had returned to work on February 4, 2008, Aetna closed the claim effective February 3, 2008.[14]

On February 8, 2008, Price had a "relapse" while at work, and Aetna was then informed that Price was told to remain off work until March 4, 2008, when he was to be examined by a vascular surgeon.[15]  Accordingly, in a letter dated March 6, 2008, Aetna informed Price that, due to the relapse, his benefits were reinstated, effective February 9, 2008 – or the day after Price left work with the relapse.[16]  Aetna later approved benefits for Price through April 30, 2008, and again through June 18, 2008.[17]

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 6-7.

[15] *Id.* at 7.

[16] *Id.*

[17] *Id.*

During this period, Aetna continued to assess Price's claim for LTD benefits. As part of that evaluation, a review was conducted by Dr. Wendy Weinstein, an independent board-certified internist.[18] This review included a peer-to-peer consultation between Dr. Weinstein and Dr. Shreeniwas Lele, Price's primary care physician, where Dr. Lele stated that there were "no significantly abnormal musculoskeletal findings and no objective documentation of impairments from [Price's] medium work."[19] This peer-to-peer consultation also revealed a February 19, 2008, stress test that showed Price had "a very good exercise capacity and normal ejection function."[20]

In addition to the peer-to-peer consultation with Price's primary care physician, the reviewing physician, Dr. Weinstein, also noted in her report that Price had been evaluated by a neurologist, a rheumatologist, and a vascular surgeon in response to Price's complaints of weakness, pain, and fatigue, but that these evaluations had not revealed any significant underlying abnormalities.[21] Dr. Weinstein further noted that Price was ultimately diagnosed with fibromyalgia and was taking Lyrica, despite the fact that "nerve conduction studies have not revealed any significant abnormalities consistent with neuropathy."[22] In the end, Dr. Weinstein concluded her review by stating that "[t]here are no documented restrictions

---

[18] *Id*.

[19] *Id.*

[20] *Id*.

[21] *Id.*

[22] *Id*. at 7-8.

and limitations from the claimant's job duties from the timeframe in question."[23] Thus, based on this review and the lack of objective medical evidence to support his claim for LTD benefits, Aetna terminated Price's LTD benefits on June 19, 2008.[24]

Price appealed from this decision denying him benefits.[25] Aetna, through an appeal specialist who was not involved in the original decision to terminate benefits, thereupon conducted a review of the following documents relevant to Price's claim:

- A job analysis worksheet for an Avery Dennison production specialist [Price's job];

- Office notes from Dr. Lele, Price's primary care physician, dated August 21, 2007;

- A behavioral health clinician statement dated October 17, 2007, from Dr. Thomas Svete;

- Additional behavioral health clinician statements dated December 14, 2007 and January 28, 2008;

- Correspondence from University Hospitals dated January 23, 2008;

- Lab reports from Dr. Lele dated February 11, 2008, March 21, 2008, April 17, 2008, and May 13, 2008;

- Status reports from Dr. Lele dated February 14 and 15, 2008;

- Return to work requests dated February 14, 2008, and March 18, 2008;

- A work status report from Dr. Norton Winer, a neurologist;

---

[23] *Id.* at 8.

[24] *Id.*

[25] *Id.*

- Correspondence from Vascular Solutions, dated March 7, 2008;

- An office note from Dr. Mark Goldberg, dated March 7, 2008;

- An ultrasound from Dr. Lele of Price's upper right quadrant;

- A consultant's report from Dr. Margaret Tsai, a rheumatologist, dated April 21, 2008;

- An estimated physical abilities form from Dr. Winer dated April 21, 2008;

- An attending physician statement from Dr. Lele dated April 17, 2008;

- Chart notes from Dr. Winer for visits of May 7, 2008, and July 31, 2008;

- Follow-up note from Dr. Ali Askari, a University Hospitals rheumatologist;

- Dr. Weinstein's independent review of June 4, 2008;

- A completed questionnaire submitted by Avery Dennison to Dr. Bruce Piszel, a pain specialist, dated August 1, 2008;

- Prescription notes from Dr. Piszel dated August 5, 2008;

- Office notes from Dr. Lele dated November 3, 2008, and December 2, 2008;

- An MRI of Price's cervical spine dated November 25, 2008.[26]

In addition to Aetna's review, Price's claims file was also independently reviewed by physicians specializing in internal medicine/endocrinology, rheumatology, pain management,

---

[26] *Id*. at 8-9.

neurology and psychology.[27] Further, additional peer consultations were conducted with two of Price's treating physicians – Drs. Piszel and Lele.[28]

On that record, the independent appeals review panel concluded that, while Price was experiencing some pain, stress symptoms, and anxiety, he was not disabled as that term is defined in the Plan.[29] Consequently, Aetna upheld the prior decision to terminate Price's LTD benefits.[30] Price then filed the present action seeking judicial review of that decision.[31]

## Analysis

**A.     Standard of review– ERISA/arbitrary and capricious**

A beneficiary's challenge to the denial of long-term benefits under a plan governed by ERISA requires me to review the plan administrator's decision in light of the evidence in the administrative record that was before the plan administrator at the time.[32] Where the plan at issue gives the plan administrator discretionary authority to construe and interpret the

---

[27] *Id.* at 9.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] ECF # 1.

[32] *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998) (citations omitted).

plan's terms, as here,[33] the plan administrator's decision is reviewed to determine if it was "arbitrary and capricious."[34]

As the Sixth Circuit has stated:

> "'The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.' Under this deferential standard of review, an appellate court will uphold the plan administrator's decision if it is 'rational in light of the plan's provisions.' Stated differently, if the decision 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence,' the decision will be upheld."[35]

However, the Sixth Circuit has also been careful to emphasize that "merely because our review [under the arbitrary and capricious standard] must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions."[36] Rather, in determining whether the plan administrator's decision to deny benefits was arbitrary or capricious, reviewing

---

[33] The Plan here provides that Aetna has "discretionary authority" to determine "whether and to what extent" participants are entitled to benefits, and to construe terms in the policy. ECF # 14 at 12, quoting the Plan.

[34] *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003).

[35] *Rose v. Hartford Fin. Servs. Group*, 268 F. App'x 444, 449 (6th Cir. 2008) (internal citations omitted).

[36] *McDonald*, 347 F.3d at 172 (citation omitted).

courts are to consider the quantity and quality of the medical evidence in the administrative record and the opinions on both sides of the issues.[37]

Moreover, as the United States Supreme Court held, even in cases involving the arbitrary and capricious standard of review, the concepts of trust law and fiduciary duty must undergird the plan administrator's decision.[38] Thus, the reviewing court must be mindful that when an insurance company is both the decision-maker as to awarding benefits and the payee of any benefit, there is an inherent conflict of interest that, while not precluding deferential review, must be weighed as a factor in determining if there has been abuse of discretion.[39]

In addition, the Sixth Circuit has consistently held that a claimant "carries the burden of presenting evidence showing that she was disabled from performing any occupation for which she was reasonably qualified by education, training and experience."[40] This burden on the claimant recognizes that a distinction exists between requiring a claimant to establish a level of pain, proof of which is inherently subjective and cannot be required of a claimant, and requiring a claimant to establish the limits in her functional capacities, proof of which can be objectively measured and so can be required of the claimant.[41]

---

[37] *Id.*

[38] *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 2347-48 (2008).

[39] *Id.* at 2346.

[40] *Rose*, 268 F. App'x at 452 (citation omitted).

[41] *Id.* at 453-54; *Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 499-500 (6th Cir. 2008); *see also*, *Patrick v. Hartford Life & Accident Ins. Co.*, 543 F. Supp. 2d 770, 778 (W.D. Mich. 2008) ("[A] plan administrator does not act arbitrarily and capriciously in

Similar to the requirement to consider a conflict of interest, the reviewing court must also factor in whether the plan administrator based a decision to deny benefits on a mere file review as opposed to conducting a physical examination of the applicant.[42]

**B.     Application of standard – Aetna's motion for judgment on the administrative record should be granted.**

As noted, under the standard of review this Court is to review the administrative record that was before Aetna, the plan administrator, when it denied Price's appeal from the decision to deny LTD benefits and determine if that decision was arbitrary and capricious. However, as also noted, in performing that review, this Court must scrutinize the quality and quantity of the evidence in the record to be certain that Aetna has discharged its duty as a fiduciary. I am particularly mindful of this responsibility when, as here, Price has not filed a cross-motion for judgment on the pleadings or even responded to Aetna's motion in that regard. That stated, for the following reasons, I will recommend finding that Aetna's decision to deny benefits was not arbitrary and capricious.

In considering Aetna's motion, I note initially that the review of Price's claim was extensive, involving records from some seven separate physicians who directly examined Price. Further, the review, as noted, also included independent assessments of that record

---

denying a claim for benefits when the claimant fails to provide objective evidence supporting her functional limitations.").

[42] *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 553 (6th Cir. 2008).

of care by physicians in four specialties. Finally, the review included separate direct consultations with Price's two main treating physicians.

From that evidence, Aetna initially noted that, despite Price's original diagnosis of Type II diabetes, there was no documentation in any record reviewed of diabetic symptoms "being of an intensity or severity that would preclude the performance of the essential functions of [Price's] job."[43] The record also disclosed that Price's diabetes "was documented to be under good control," and that an examination by a vascular surgeon found no vascular disease to explain his symptoms.[44]

The Aetna review further stated that, despite prior cervical disk surgery, Price's MRI revealed "no evidence of significant cervical spinal cord or nerve root impingement syndrome."[45] The review also noted that although autonomic/balance testing was suggested diagnostically, no evidence in the record existed that such test were done.[46] Indeed, the review observed, although Price has been diagnosed with "polyneuropathy, lumbar radiculopathy, and possible cervical radiculopathy," his neurological examination findings

---

[43] ECF # 14, Ex. A at 228. The page numbers in this exhibit – Aetna's record – were paginated by Aetna in a Bates-stamp style.

[44] *Id*.

[45] *Id*.

[46] *Id.*, at 229.

were normal, and there was no evidence that Price had pain "of such intensity and/or severity as to preclude work."[46]

As to the direct consultation with Dr. Piszel, the pain specialist who was the only physician to raise the issue of pain precluding Price from resuming employment, the review noted that Dr. Piszel concluded that if a neurologic exam did not demonstrate autonomic dysfunction, then Price could go back to work, since Dr. Piszel "was not keeping [Price] out of work because of primary pain issues."[47]

Similarly, the peer-to-peer consultation with Dr. Lele, Price's primary care physician, established that "although [Price] continued to report [to Dr. Lele] musculoskeletal aches and pains," Dr. Lele could locate "no findings [in the record] consistent with his complaints."[48] Moreover, on the issue of Price's suitability for work, Dr. Lele specifically told the Aetna review panel that he would defer expressing any opinion on that question to experts in neurology and pain management.[49]

Finally, the review took note that Price had also been seen for anxiety, stress, and panic attacks.[50] While acknowledging that Price had presented these symptoms at various occasions, the review also stated that there was no evidence in the record from any mental

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

health professional as to the nature, severity, or frequency of these symptoms.[51] Nor did the record contain any recommendations as to treatment, if any, for these symptoms.[52]

On this record, the Aetna review concluded that "there [is] a lack of medical evidence to support [Price's] inability to perform the essential functions of his regular occupation as of [the date of LTD benefits termination]."[53]

Reviewing this process in light of Aetna's responsibility as a fiduciary, I note that the process followed was systematic and thorough.  In particular, in addition to the record evidence, the review panel conducted direct consultations with Price's two major treating physicians that specifically examined what these physicians believed to be the cause of Price's symptoms, and what evidence they were relying on to make that assessment. I also note that the review panel was careful to look for evidence in the areas of:  (1) Price's diabetes, (2) his prior cervical surgery, (3) his current complaints of pain, and (4) his symptoms of anxiety and stress in order to determine what evidence, if any, existed in the record as to these areas that might support a finding of disability.

I particularly note that the review panel developed the record evidence from Dr. Piszel as to Price's pain, which was the only record evidence suggesting possible work limitations from pain.  That exploration in the peer-to-peer review, established, as noted, that Dr. Piszel would not recommend keeping Price from returning to work unless an independent

---

[51] *Id.*

[52] *Id*.

[53] *Id*.

neurological exam showed autonomic dysfunction.  Because no such finding was present in this record, the review panel had a sound basis to discount any interpretation of prior statements by Dr. Piszel as to Price's pain suggesting a limitation on his ability to return to work.

In the end, although the Aetna review did not include a new examination of Price, I recommend finding that Aetna's decision to deny Price LTD benefits was grounded on the review panel not being able to locate any evidence in the record supportive of Price's disability claim, despite, as noted, conducting a detailed review of all submitted evidence, plus developing additional evidence from Price's treating physicians.  I also note that Price submitted no objective evidence for the record substantiating any work-related effect from his pain, which, as noted above, is his burden to show.

## Conclusion

Accordingly, for the reasons stated, I recommend finding that Aetna's decision to deny LTD benefits to Price was made as the result of a deliberate, principled reasoning process and on a record of substantial evidence.  As such, I further recommend finding under the applicable legal standard that this decision was not arbitrary and capricious.  Therefore, I finally recommend that Aetna be granted judgment in its favor on the administrative record.


Dated:   August 31, 2010                         s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[54]

---

[54] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).